30

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
ENTERED
APR 06 1999
Michael N. Milby, Clerk of Court
By Deputy Clerk

| | | |
|---|---|---|
| ROSA MARIA VELA, ET AL. | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. B-95-172 |
| | § | |
| UNITED STATES OF AMERICAN | § | |

## MEMORANDUM OPINION

The parties to this Federal Tort Claims Act case consented, pursuant to the provisions of 28 U.S.C. § 636(c), to the undersigned United States Magistrate Judge conducting all proceedings including entry of final judgment in this case.

### JURISDICTION

The Plaintiffs in this case are Rosa Maria Vela, widow of Baldemar Vela, deceased, and the Vela children, Nelly, a minor, and Blanca, an adult. The Defendant is the United States of America. Suit was brought under the Federal Tort Claims Act 28 U.S.C. § 1346b. The Vela's seek damages for the wrongful death of Baldemar Vela on September 6, 1993.

### FACTUAL BACKGROUND

The evidence in this case presented at a bench trial held on March 18-19, 1997, orally and through deposition was as follows:

Baldemar Vela awoke at 11:30 P.M. on September 5, 1993, complaining of chest pains. Realizing that Mr. Vela's problems were sufficiently serious that medical care was necessary, the Vela family drove in the family car to Valley Regional Medical Center, a Brownsville hospital with a fully staffed emergency room, not far from their home. Upon arriving in the hospital

parking lot, Mr. Vela told his wife to drive to Matamoros, Mexico, because he did not want to incur the expense of going to the emergency room.

Mrs. Vela, while driving toward Matamoros with her emergency lights flashing, suggested to Mr. Vela that they go to Brownsville Medical Center, another Brownsville hospital with a fully staffed emergency room. Mr. Vela refused, and the family drove to a doctor's office in Matamoros. There he saw Dr. Arroyo Cardenas, who on the basis of a cursory exam treated Mr. Vela with an injection, some medications and gave him prescriptions which were filled at a pharmacy in Matamoros.

The Vela's drove to the Gateway Bridge, Brownsville, Texas. They arrived at the Brownsville Port of Entry at approximately 2:00A.M. September 6, 1993. Mrs. Vela told the immigration inspector that Mr. Vela, a naturalized U.S. citizen had left his documentation at home. She was told that she needed to go get those documents and return to the Immigration and Naturalization Service ("INS") office, so that Mr. Vela could be admitted to the United States.

Mr. Vela and his daughter, Blanca, waited at the Bridge. While waiting, Mr. Vela collapsed. Emergency medical personnel were summoned. Mr Vela did not respond to resuscitation efforts. His death was attributed to a massive heart attack.

Mrs. Vela testified that when she arrived at the initial inspection point at the border she advised the inspector that her husband was sick. However, she admitted that she did not have her "flashers" on as she had when driving to Matamoros. This court regards that omission as significant, because much of the conflict in the testimony in this case is as to whether or not the INS inspectors were aware of the gravity of Mr. Vela's condition. Mrs. Vela and Blanca testified that they attempted to convey the serious nature of the problem to the inspectors. This testimony

2

is contradicted by the inspectors and belied by her failure to have her flashers on. Additionally, Mrs. Vela's testimony concerning the urgency she felt at the Bridge is belied by her testimony that upon leaving the Bridge to get Mr Vela's papers, she did not call an ambulance either on the way to her home or while at home.

Raul Garza, Jr. ("Garza"), the Customs Inspector who was on duty at the time the Velas approached the inspection station at the Gateway International Bridge, testified that he referred the Velas to secondary inspection because of his concerns that Mr. Vela had not demonstrated his right to enter the country. According to Garza, the Velas told him that they had taken Mr. Vela to a doctor in Matamoros because he had been suffering. Mr. Garza testified that Mr. Vela did not look sick to him and no one told him there was an emergency.

Juanita Payan (" Inspector Payan"), an INS Inspector, testified that she was on duty at secondary inspection with INS Inspector Gilbert Rendon ("Inspector Rendon") when the Vela's arrived at secondary inspection. Inspector Payan testified that Mr. Vela looked tired and drunk; not an unusual sight at the Bridge in the early morning hours.

According to Inspector Payan, Mrs. Vela left to go get Mr. Vela's papers without expressing any urgency or stating that Mr. Vela had to go to a hospital or doctor.

A short while later, Inspector Payan testified, Blanca Vela came up to the desk and asked that an ambulance be called. An ambulance was called.

Inspector Rendon testified that when the Velas spoke with him they told him that they had taken Mr. Vela to Matamoros to see a doctor. Inspector Rendon had no impression that the Velas were having an emergency when he was speaking with them. He was first aware of the gravity of Mr. Vela's condition when Blanca Vela told him her father was sick. This was several minutes

3

after Mrs. Vela had left to get Mr. Vela's papers.

**The Medical Testimony**

Mr. Vela first saw Dr. Arroyo in Matamoros, Mexico. On the strength of a superficial medical exam, Dr. Arroyo's diagnosis was acute gastritis. He gave Mr. Vela an injection to lower his blood pressure and prescriptions for an antacid and analgesic.

When Mr. Vela collapsed at the INS office, local EMS was summoned. They attempted to resuscitate Mr. Vela and transported him to Brownsville Medical Center ("BMC") where, after further resuscitative efforts, he was pronounced dead.

The government's expert witness, Dr. Edward McGlynn, a cardiologist who formerly practiced in Brownsville, testified, based on his review of the medical records, that by the time Mr. Vela arrived at BMC, he had had a heart attack several hours earlier. Dr. McGlynn also testified that the care Mr. Vela received in Matamoros was inadequate and probably exacerbated his problems. Dr. McGlynn was of the opinion that had Mr. Vela gone to the emergency room of either hospital in Brownsville before going to Mexico he would have had a good chance of survival. He felt that had Mr. Vela been allowed to proceed directly to the hospital upon returning from Mexico, there was a possibility of survival.

**Plaintiffs' Theory of the Case**

The Plaintiffs argue that there was a written policy at Gateway International Bridge of expediting admission to the country of those having medical emergencies. According to Plaintiffs, the failure of the INS agents to implement this policy precluded Mr. Vela from obtaining medical care which might have saved his life.

4

**Findings of Fact and Conclusions of Law**

There is only one fact dispute in this case which is crucial to a determination of the outcome. Mrs. Vela and her daughter claim that they told the Customs and Immigration officials that Mr. Vela was in the midst of a medical emergency. None of the agents confirm this and the only extraneous evidence does not support these claims. The fact that Mrs. Vela was not operating the emergency flashers on her vehicle as she had been going to Matamoros, and the fact that she did not call an ambulance on her way home from the Bridge to get Mr. Vela's papers leads this court to the conclusion that she did not realize the gravity of Mr. Vela's condition and did not convey to the personnel on duty at the Bridge any sense that there was an emergency.

The evidence raises a serious question as to whether or not any medical care would have helped Mr. Vela at the time he arrived at the Bridge. Dr. McGlynn testified that had Mr. Vela been taken to BMC, the hospital closest to the Bridge, without delay, there was a possibility that he would have survived.

The tragedy of this case, and the cause of Mr. Vela's death, was his insistence that he be taken to Matamoros.

The court finds as a matter of fact that the actions of the INS inspectors on duty at the Gateway Bridge at the time of this incident did not constitute negligence.

DONE at Brownsville, Texas, this 7th day of April 1999.

John Wm. Black
United States Magistrate Judge